UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JESSICA S.,[1]

               Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 6:20-cv-01073-YY

OPINION AND ORDER

YOU, Magistrate Judge:

      Plaintiff Jessica S. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying her application for Supplemental Security Income

("SSI") disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§

1381-1383f.  This court has jurisdiction to review the Commissioner's final decision pursuant to

42 U.S.C. §§ 405(g) and 1383(g)(3).[2]  For the reasons set forth below, that decision is

AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last
name.  Where applicable, this opinion uses the same designation for a non-governmental party's
immediate family member.

[2] The parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C.
§ 636(c).

**PROCEDURAL HISTORY**

Plaintiff protectively filed for SSI on November 17, 2017, alleging disability beginning on December 16, 2016.  Tr. 185-90.  Her application was initially denied on March 15, 2018, and upon reconsideration on July 25, 2018.  Tr. 116-19.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 18, 2019.  Tr. 56-87.  After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on October 4, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 36-55.  The Appeals Council denied plaintiff's request for review on May 12, 2020.  Tr. 1-6.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 16, 2016. Tr. 41. At step two, the ALJ determined plaintiff suffered from the following severe impairments: posttraumatic stress disorder (PTSD), major depressive disorder, bipolar disorder, and mood disorder. Tr. 41. The ALJ recognized other impairments in the record, i.e., right upper extremity radiculopathy, an ovarian cyst, and alcohol abuse in sustained remission, but concluded these conditions to be non-severe.

The ALJ found plaintiff's neurological and mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings in 12.04 and 12.15. Tr. 42. Regarding the mental impairment finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders and the serious and persistent criteria, known as the "paragraph C" criteria. Tr. 42-43; 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 42. The ALJ next assessed plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, I find that the claimant has the
residual functional capacity to perform a full range of work at all exertional levels
but with the following nonexertional limitations: the claimant can understand,
remember and carry out simple instructions that can be learned in 30 days or less.
The claimant is limited to independent work, which involves no public contact,
occasional direct coworker interaction and no group tasks, and occasional
supervisor contact. Supervisor contact is generally limited to a visit from the
supervisor one-two times per shift to give work assignments and answer
questions, but in general, the individual is left to complete tasks independently.
The claimant should perform only low stress work, which is defined as requiring
only occasional changes in work setting, occasional changes in work duties,
simple work-related decisionmaking and no work on a conveyor belt. The
claimant can have no exposure to moving mechanical parts and high, unprotected
place hazards, as rated by the Dictionary of Occupational Titles (DOT).

Tr. 43.

At step four, the ALJ found plaintiff was unable to perform any past relevant work.  Tr.

48.

At step five, the ALJ found that considering plaintiff's age, education, work experience,

and RFC, she could perform jobs that existed in significant numbers in the national economy

including: industrial cleaner, laborer (stores), and automobile detailer.  Tr. 49.  Thus, the ALJ

concluded plaintiff was not disabled at any time from November 17, 2017, through the date of

the ALJ's decision on October 4, 2019.  Tr. 49.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting her subjective symptom

testimony; (2) improperly rejecting lay witness testimony; and (3) improperly rejecting the

medical opinions of Laura Foerst, FNP, PMHNP and Dawn Sutro, LMFT.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."
*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that
the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not
credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12
F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the
reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."
*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's
credibility finding is supported by substantial evidence in the record, [the court] may not engage
in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR")
96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.
*See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to
"credibility," clarifies that "subjective symptom evaluation is not an examination of an
individual's character," and requires the ALJ to consider all the evidence in an individual's
record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must
examine "the entire case record, including the objective medical evidence; an individual's
statements about the intensity, persistence, and limiting effects of symptoms; statements and
other information provided by medical sources and other persons; and any other relevant
evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably
be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr.
44. However, the ALJ concluded that plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."  Tr. 44.

### A.      Objective Medical Evidence

"An ALJ does not provide specific, clear, and convincing reasons for rejecting a

claimant's testimony by simply reciting the medical evidence in support of his or her residual

functional capacity determination. "  *Brown-Hunter v. Colvin*, 806 F. 3d 487, 489 (9th Cir.

2015).  Instead, "the ALJ must specifically identify the testimony she or he finds not to be

credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*,

246 F.3d 1195, 1208 (9th Cir. 2001); *see also Orteza*, 50 F.3d at 750 (holding the reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ

did not arbitrarily discount the claimant's testimony.").  Additionally, although lack of

supporting medical evidence cannot form the sole basis for discounting subjective pain

testimony, it is a factor the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th

Cir. 2005).

Here, the ALJ cited extensively to the record, specifically noting plaintiff's testimony that

she was unable to sustain full-time work due to symptoms of depression, anxiety, and PTSD.  Tr.

44.  The ALJ contrasted plaintiff's testimony with a 2016 mental status exam by Laura Foerst,

FNP, PMHNP, which indicated plaintiff's objective presentation was "grossly within normal

limits, including mood, cognition, sensorium, and behavior."  *Id.* (citing Tr. 422).  The ALJ also

cited a June 2018 follow-up exam with Foerst where plaintiff was "exhibiting normal mood,

affect, orientation, behavior, memory, attention, concentration, and thought content."  *Id.*  (citing

Tr. 422).  Finally, the ALJ cited to yet another September 2018 follow-up appointment with

Foerst where plaintiff's objective presentation was again "grossly within normal limits."  *Id.*

(citing Tr. 434-44).  The ALJ specifically identified testimony inconsistent with the objective medical evidence, thereby setting forth a specific, clear, and convincing reason for rejecting plaintiff's subjective symptom testimony.

### B.    Activities of Daily Living

The ALJ also relied on "other evidence," specifically plaintiff's activities of daily living, to discount the intensity, persistence, and limiting effects of plaintiff's symptoms.  Tr. 44.  An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ noted inconsistencies between plaintiff's activities of daily living and her testimony that she was unable to sustain fulltime work activity due to symptoms of depression, anxiety, and PTSD, and found it difficult to be around others.  Tr. 44.  Specifically, the ALJ noted that plaintiff "goes on vacations, takes her dog to training classes, takes quilting classes" and "helped her friend by doing catering during a festival."  *Id.*; *see* Tr. 273-80, 481-643.  The ALJ also observed that plaintiff is able to go grocery shopping unaccompanied by her husband.  Tr. 44.  With regard to plaintiff's claim that she does not eat during the day because of lack of motivation, the ALJ observed that plaintiff makes dinner "most nights."  *Id.*

The ALJ further observed that plaintiff's self-reports show "she is not as cognitively or socially limited as she alleges herself to be."  Tr. 45 (citing Tr. 481-643).  The ALJ noted that in October 2017, plaintiff and her husband took a trip in their recently-purchased camper.  *Id.* (citing Tr. 620).  The ALJ also noted that plaintiff reported feeling "more capable" around the house as she focused on performing chores, such as laundry, cleaning, and unloading the

dishwasher. *Id.* (citing Tr. 620). The ALJ cited a November 2017 treatment note that stated plaintiff was "trying to keep busy" with projects, "which apparently included recently installing drywall in one of her home's hallways." *Id.* (citing Tr. 618). Additionally, the ALJ cited to an undated note stating plaintiff "had been sewing and knitting, and she was considering selling blankets and potholders on Etsy." *Id.* (citing Tr. 616). The ALJ further cited to a note from January 2018 that indicated plaintiff recently returned from a ten-day trip to San Diego to visit her husband's children. *Id.* (citing Tr. 566). Plaintiff stated it was a "good relaxing trip," and she was "less depressed" during the vacation "because she could be more in [the] moment." *Id.* (citing Tr. 566). Plaintiff also reported that she wanted to send a copy of her resume to a "garden place." *Id.* (citing Tr. 566). Additionally, the ALJ noted that plaintiff reported that "she had signed up for a quilting class, which would presumably include a certain amount of interaction with others, including instructors and classmates."[3] *Id.* (citing Tr. 558).

The ALJ reasonably used plaintiff's activities of daily living to illustrate contradictions in her testimony and thus reasonably rejected plaintiff's symptom testimony on this basis. *See Orn*, 495 F.3d at 639; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Further, the ALJ's reasoning is supported by substantial evidence in the record. *See* Tr. 273-80, 481-643. Because the ALJ's findings are supported, they must be upheld. *See Batson v. Comm'r of Soc. Sec.*

---

[3] In fact, during the hearing, the ALJ observed that plaintiff was "out and about a lot": "Hanging out with a friend in Salem. Camping. Catering job. Hood River with Drew's sister. Quilting class. . . Relaxing trip with your husband. . . The VW show in Woodburn. . . La Pine. Crescent Lake. Siletz camping." Tr. 68. Plaintiff explained that she would "be with my husband," Tr. 68, but when pressed on this, plaintiff admitted she was not with her husband when she went to quilting classes, catering, or grocery shopping. Tr. 69-70, 72. Plaintiff also conceded, as the ALJ observed, that her husband said he saw her at night. Tr. 70. The ALJ explained, "I have got to weigh the evidence that I have versus what you're telling me and they're not comporting. . . I mean you're really out and about a lot for somebody who says that they can't be near people because they get triggered." Tr. 69.

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings).

## II.    Lay Witness Testimony

Plaintiff argues the ALJ erred in failing to identify germane reasons supported by substantial evidence to reject the lay witness statement of her husband.  Pl. Br. 10.

For claims filed on or after March 27, 2017, new regulations provide that the ALJs are "not required to articulate how [they] considered evidence from nonmedical sources."  20 C.F.R. §§ 404.1520c(d); 416.920c(d).  Consequently, there is an argument that an ALJ is no longer required to provide reasons that are germane to reject lay witness testimony.  *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . .' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d).  As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in Wendy J.C.); *but see Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

The ALJ noted that the lay witness testimony from plaintiff's husband and one of her friends was "generally consistent with [plaintiff's] allegations."  Tr.  48.  However, the ALJ found the lay witness testimony to be of "limited persuasive value" "in light of the longitudinal record."  *Id.*  Specifically, the ALJ pointed to the "objective clinical evidence, course of treatment, and the opinions of the DDS medical and psychological consultants," which the ALJ found to be "persuasive evidence that supports the overall finding of non-disability."  *Id*.

As discussed above, the ALJ gave clear and convincing reasons supported by substantial

evidence in the record to discount plaintiff's subjective complaints.  Plaintiff's husband's

testimony merely repeated plaintiff's complaints.  Therefore, even if the ALJ made any error in

failing to further articulate the reasons for rejecting plaintiff's husband testimony, it is harmless.

*See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 20012) (holding that "[w]here lay witness

testimony does not describe any limitations not already described by the claimant, and the ALJ's

well-supported reasons for rejecting the claimant's testimony apply equally well to the lay

witness testimony," the failure to address the lay testimony may be deemed harmless).

## III.    Medical Opinion Evidence

Plaintiff filed her application for benefits on November 17, 2017.  For claims filed on or

after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must

evaluate medical opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title

XVI.  *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82

Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather

determine which are most "persuasive."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  To

that end, controlling weight is no longer given to any medical opinion.  *Revisions to Rules*, 82

Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The Commissioner

evaluates the persuasiveness of all medical opinions based on (1) supportability; (2) consistency;

(3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence

showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements."  20 C.F.R.

§§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).  The factors of "supportability" and

"consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The new regulations require an ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).

"The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Finally, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

A.      **Laura Foerst, FNP, PMHNP**

As previously discussed, the ALJ articulated how plaintiff's medical records do not support Foerst's opinion. The ALJ observed that plaintiff's treatment with Foerst "has been

routine, conservative, and not indicative of a chronic, disabling mental health condition." Tr. 46.

Therefore, the ALJ found, it did not "support [plaintiff's] subjective complaints." *Id.* The ALJ

further explained that, "[w]hen viewed as a whole, Ms. Foest's encounter notes do not contain

objective clinical observations that would support [plaintiff's] disabling psychological symptoms

and social obligations." Tr. 45. The ALJ found, that "[t]o the contrary, her encounter notes

consistently describe [plaintiff's] global presentation, including mood, affect, cognition,

sensorium, and behavior as within normal limits. Similarly, they do not describe the claimant as

exhibiting significant difficulties with interpersonal functioning." *Id.* The ALJ also articulated

that Foerst's opinion was "inconsistent" with plaintiff's treatment notes, which "described

[plaintiff's] objective presentation." Tr. 47.

Although plaintiff argues for a different interpretation of the record, the ALJ's finding

must be affirmed because it is reasonable and supported by substantial evidence. *See Burch*, 400

F.3d at 679 (variable interpretations of the evidence are insignificant if the ALJ's is reasonable).

## B.    Dawn Sutro, LMFT

As with Foerst, the ALJ found that plaintiff's treatment with Sutro was "routine,

conservative, and not indicative of a chronic, disabling mental health condition." Tr. 46. "[T]he

encounter notes from neither provider support [plaintiff's] subjective complaints regarding the

alleged severity of her psychological symptoms." *Id.* The treatment notes "do not contain

objective evidence that support [plaintiff's] allegations regarding her degree of social

limitations." *Id.* "When viewed as a whole, Ms. Sutro's notes show [plaintiff] consistently

alleging ongoing symptoms of depression, anxiety, and PTSD. However, they also contain self-

reports that persuasively show that she is not as cognitively or socially limited as she alleges

herself to be." Tr. 45. "Plaintiff's ability to interact appropriately with treatment providers, and

the self-reports regarding her activities, such as taking trips, attending quilting and dog training classes, and attending car shows is persuasive evidence she could perform work activity that precludes direct public contact and limits her to occasional contact with coworkers and supervisors, as consistent with the residual functional capacity." Tr. 46.

The ALJ also found Sutro's "statements to be unpersuasive," because she "opined [plaintiff] has multiple limitations caused by headaches," but she is not a medical doctor and "neither [plaintiff's] limited medical treatment notes of record, nor Ms. Sutro's notes show the claimant complaining of chronic headaches." Tr. 48. The ALJ further observed that Sutro "is not a vocational expert, and she expressly seeks to opine broadly on [plaintiff's] ability to 'obtain and maintain a job, even on a part-time basis,' rather than opine to her specific vocational abilities and limitations." *Id.*

In sum, the, the ALJ articulated how Sutro's opinion was unsupported by and inconsistent with plaintiff's medical record and Sutro's own treatment records. Although plaintiff argues for a different interpretation of the record, the ALJ's finding was reasonable and supported by substantial evidence. *See Burch*, 400 F.3d at 679 (variable interpretations of the evidence are insignificant if the ALJ's is reasonable).

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  December 30, 2021.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge